United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL F. SOARES,

Plaintiff,

v.

WILLIAM VARNER, et al.,

Defendants.

Case No. 21-cv-04526-VKD

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TRANSFERRING THIS ACTION**

Re: Dkt. No. 10

## I. BACKGROUND

Plaintiff Paul F. Soares, proceeding pro se, sues defendants William Varner, an Oklahoma resident, and Arrowhead Energy, Inc. ("Arrowhead")[1], an Oklahoma corporation, for negligent misrepresentation and conversion, as well as for an accounting.[2] The Court's subject matter jurisdiction is based on diversity, 28 U.S.C. § 1332. According to the complaint, Mr. Soares is a California resident who owned 100 percent of the stock in Funchal Minerals Limited, an Oklahoma corporation, doing business as OK Minerals ("OKM"). Dkt. No. 1 at 1, 5; Dkt. No. 11, Exs. 1, 2. OKM allegedly owned oil wells in Garvin County, Oklahoma, which defendants agreed

[1] Mr. Soares's claims against defendant Sunoco were dismissed with prejudice for lack of personal jurisdiction by Judge Koh, who previously presided over this action. *See* Dkt. No. 40. Messrs. Soares and Varner and Arrowhead have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 2, 12. Following the dismissal of Sunoco, this action was reassigned to this Court.

[2] The caption of Mr. Soares's complaint identifies his claims as "Breach of Implied in Fact Contract, Conversion, Interference in Economic Advantage, and an Accounting." However, the only claims actually asserted in the body of the complaint are for negligent misrepresentation, conversion and an accounting.

to manage. Dkt. No. 1 at 1-2. Mr. Soares alleges that defendants fraudulently asserted ownership of the oil wells, a mineral lease, and unspecified equipment, and that they converted cash to pay for their own expenses unrelated to OKM, leaving OKM bankrupt. *Id.* at 2-4. He seeks $1 million in lost property, $39,000 in lost oil (pre-foreclosure) and $360,000 in lost oil (post-foreclosure), $1,450,000 for the value of equipment, minerals and other property defendants allegedly converted, as well as lost income and business/goodwill in an amount to be proven. *Id.* at 9.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Mr. Soares opposes the motion. The parties agreed that no hearing was necessary, and the Court deemed the matter suitable for determination without oral argument. Civil L.R. 7-1(b); Dkt. No. 46. Upon consideration of the moving and responding papers, the Court grants defendants' motion to dismiss and transfers this action to the Western District of Oklahoma.

## II. LEGAL STANDARD

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004) (citation omitted). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Id.* at 800. When a defendant's motion "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotations and citations

United States District Court
Northern District of California

omitted). "A plaintiff may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800). "But uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id*. (quoting *Schwarzenegger*, 374 F.3d at 800).

## III. DISCUSSION

### A. Defendants' Request for Judicial Notice

Defendants request that the Court take judicial notice pursuant to Federal Rule of Evidence 201 of (1) records from the website of the Oklahoma Secretary of State regarding Funchal Minerals Limited, (2) *In re Funchal Minerals Limited*, Case No. 18-12988 (U.S. Bankruptcy Court W.D. Oklahoma), and (3) *In re Paul Fairfax Soares*, Case No. 17-50197-HLB (U.S. Bankruptcy Court N.D. Cal.) and adversary proceeding *Soares v. Arrowhead Energy Inc., et al*., Adv. Proc. No. 17-5036 HLB (U.S. Bankruptcy Court N.D. Cal.), and in particular a motion to dismiss filed by the trustee, a copy of which is attached to the accompanying Declaration of William F. Varner (Dkt. No. 10-1) as Exhibit 1.

A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Defendants did not provide a declaration authenticating the Oklahoma Secretary of State website records or the docket sheet in *In re Funchal Minerals Limited*, Case No. 18-12988 (U.S. Bankruptcy Court W.D. Oklahoma). However, Mr. Soares did not object to defendants' request for judicial notice, and he does not dispute the authenticity of any of the records submitted for judicial notice. Accordingly, the Court takes judicial notice of these records, not as to disputed facts, but solely for the existence of the bankruptcy matters and the fact that Funchal Minerals Limited is an Oklahoma corporation—all of which appear to be matters that are not subject to reasonable dispute.

**B. Defendants' Motion to Dismiss**

"The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068. Mr. Soares argues that this Court has both general and specific jurisdiction over defendants.

**1. General Jurisdiction**

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Super. Ct. of California*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear*, 564 U.S. at 924). "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, i.e., comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11 (internal quotations, citations, and alterations omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

This Court cannot exercise general jurisdiction over defendants because they cannot fairly be regarded as "at home" in California. Mr. Soares asserts in conclusory fashion that the Court has general jurisdiction over Mr. Varner and Arrowhead because they have done business with him "and affiliated companies in California and Washington" for decades, including soliciting investments and money management contracts from him, providing him with loans, and depositing money into bank accounts in California. Dkt. No. 26 at 6; Dkt. No. 26-1 ¶¶ 2, 3, 6-10, 11, 12, 20-22. Mr. Soares's complaint, however, acknowledges that Mr. Varner is an Oklahoma resident and that Arrowhead is domiciled in Oklahoma, and his allegations indicate that his business dealings with defendants concerned the management of oil wells in Oklahoma, reportedly

owned by OKM, an Oklahoma corporation. Dkt. No. 1 at 2, 5; Dkt. No. 11, Exs. 1, 2. Mr. Soares otherwise states, without elaboration or explanation, that defendants have also conducted business with "alleged[] other California residents," who remain unidentified. Dkt. No. 26 at 2; Dkt. No. 26-1 ¶ 10.

Mr. Varner avers that he is Arrowhead's president and an Oklahoma resident and that Arrowhead is an Oklahoma corporation with its headquarters and principal place of business in Edmond, Oklahoma. Dkt. No. 10-1 ¶ 2. Additionally, Mr. Varner states that Arrowhead manages oil and gas properties in Oklahoma; does not manage properties, own properties, or conduct business in California; does not maintain an agent for service of process in California; does not have any offices, employees or operations in California; and does not advertise or solicit actual or potential customers in California. *Id.* ¶ 3. Mr. Varner further states that neither he nor Arrowhead have owned, leased, possessed or maintained any real or personal property in California; entered into a contract for services to be furnished in California; owned, leased, or maintained an office, residence of place of business in California; derived revenue from goods used or consumed in California; or maintained bank accounts or investment accounts in California. *Id.* ¶¶ 4-9. Mr. Soares has provided no evidence or plausible allegation to the contrary.

Because Mr. Soares has not established that defendants' connections with California are so substantial, continuous, and systematic that defendants can be deemed to be present in California, the Court lacks general personal jurisdiction over defendants.

**2. Specific Jurisdiction**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 283-84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

United States District Court
Northern District of California

(quoting *Goodyear*, 564 U.S. at 919).

"Two principles animate the 'defendant-focused' inquiry." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the 'defendant himself' creates with the forum State.'" *Id*. (quoting *Walden*, 571 U.S. at 284); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Axiom Foods*, 874 F.3d at 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 285). Thus, "[i]t follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id*. (quoting *Walden*, 571 U.S. at 286). "These principles apply to cases involving intentional torts." *Id*.

Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable. *Id*. (quoting *Burger King Corp.*, 471 U.S. at 476-78).

**a. Purposeful Direction**

A purposeful direction analysis is most often used in suits sounding in tort. *Id*. at 802. "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 803. The Ninth Circuit evaluates purposeful direction under the three-part "effects" test derived from

United States District Court
Northern District of California

*Calder v. Jones*, 465 U.S. 783 (1984). *Id.* The *Calder* "effects" test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotations and citation omitted). In this context, an "intentional act" refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.* at 806. "The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue" and "require[s] 'something more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California[.]" *Id.* at 806.

Even crediting Mr. Soares's assertions that defendants engaged in an intentional act by soliciting his business and investments, he has not sufficiently demonstrated that defendants expressly aimed their conduct at California. Mr. Soares contends that defendants' "actions, management and operating contracts and unregistered investments in Oklahoma and elsewhere were directed to Plaintiff and his affiliated companies in California" and that defendants "were very much aware that their business activities, misappropriation of funds and payment of Defendants['] debts in California with the misappropriated funds were going to cause Plaintiff's financial demise in California." Dkt. No. 26 at 4, 5; *see also* Dkt. No. 26-1.[3] At most, Mr. Soares has demonstrated that defendants had a business relationship with him. Under *Walden*, this is insufficient to establish that defendants' suit-related conduct creates a substantial connection with California. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

Mr. Soares argues that defendants are subject to personal jurisdiction here because he named Mr. Varner and Arrowhead as defendants in an adversary proceeding Mr. Soares previously filed in the U.S. Bankruptcy Court in this district. Dkt. No. 26 at 2-3; *see also* Dkt. No.

[3] Defendants object to the vast majority of Mr. Soares's declaration on the grounds that his assertions are vague, ambiguous, lack specificity, argumentative, speculative and lack personal knowledge. Although defendants' objections are well-taken, the Court has reviewed and considered Mr. Soares's declaration.

10-1 ¶ 10. However, "it is not enough that there is some prior action involving the defendant in the forum. The plaintiff must still show that the defendant has sufficient contacts with the forum." *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F.Supp.3d 779, 792 (N.D. Cal. 2020). While Mr. Soares suggests that the bankruptcy proceedings related to defendants' alleged suit-related conduct, the Ninth Circuit has emphasized that "[t]here must be a history of relevant contacts between the nonresident defendant and the state." *Threlkeld v. Tucker*, 496 F.2d 1101, 1104 (9th Cir. 1974). Mr. Soares has failed to establish such a history of relevant contacts between defendants and California. *Cf. id.* at 1104-05 (concluding that the defendant was subject to personal jurisdiction in California where the defendant filed a California action resulting in judgment against him, and the litigation was "part of a [defendant]-initiated pattern of conscious and intentional utilization of the courts of the forum state."). Although Mr. Soares posits that defendants "would have used the California Courts to collect the debts and loans owed by [Mr. Soares], if not paid" (Dkt. No. 26-1 ¶ 13), his assertion is entirely speculative, and he has presented no evidence that defendants have actually done so. Moreover, Mr. Varner attests that apart from the bankruptcy adversary proceeding filed by Mr. Soares, neither he nor Arrowhead has participated in any judicial proceeding in any state or federal court in California. Dkt. No. 10-1 ¶ 12.

Mr. Soares has not established that defendants purposefully directed their conduct or activities toward California.[4]

[4] Mr. Soares's argument that defendants purposefully availed themselves of the privilege of conducting activities in California similarly fails. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 803. There is no indication that defendants executed or performed a contract here. As discussed above, the parties' business relationship concerned the management of oil wells in Oklahoma. *See, e.g., Arc Wood & Timbers, LLC v. Riverwood Flooring & Paneling, Inc.*, No. 21-cv-04885-HSG, 2021 WL 5771136, at *4 (N.D. Cal. Dec. 6, 2021) (concluding that despite the parties' 71 transactions totaling $2.3 million over the course of a decade, the court lacked specific personal jurisdiction over the defendants where the "center of gravity" of the parties' relationship was not in California and there was no evidence or plausible allegation that defendants' California contacts were made for the purpose of seeking California's protections or benefits.)

**b. Arising Out of or Relating to Forum-Related Activities**

Even if the Court were to find that Mr. Soares established the first prong of the specific jurisdiction test, he has not demonstrated facts sufficient to establish the second requirement that his claims arise out of defendants' contacts with California. *Schwarzenegger*, 374 F.3d at 802; *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 141 S. Ct. 1017, 1025 (2021) ("The plaintiff 's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum.") (quoting *Bristol-Myers*, 137 S. Ct. at 1780). The record demonstrates that Mr. Soares's claims arise solely out of defendants' management of oil wells in Oklahoma, their alleged failure to make proper repairs to those oil wells, and defendants' alleged fraud by which they transferred oil from Oklahoma to Texas and misappropriated payments from the sale of oil and equipment that Mr. Soares says belonged to him. Dkt. No. 1 at 1-5; Dkt. No. 26 at 2. Mr. Soares has not established that this action arises out of or relates to defendants' contacts with California. Because he has not satisfied the first and second prongs for specific personal jurisdiction, the Court need not proceed to the third prong of the analysis.

The Court lacks specific personal jurisdiction over defendants.

**C. Pendent Personal Jurisdiction**

Mr. Soares urges the Court to exercise pendent jurisdiction over defendants. "Under this doctrine, a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004). Because the Court concludes that it does not have personal jurisdiction over defendants as to any of Mr. Soares's claims, the Court does not have pendant personal jurisdiction over defendants.

**D. Dismissal or Transfer**

In a civil action, if the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]" 28 U.S.C. § 1631;

*see also Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (finding a lack of personal jurisdiction and remanding with instruction that district court dismiss or transfer the action pursuant to 28 U.S.C. § 1631). "[T]he action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. A motion to transfer is unnecessary "because of the mandatory cast of section 1631's instructions." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotations and citation omitted). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Id.* (internal quotations and citation omitted).

Based on Mr. Varner's declaration that he is Arrowhead's president and that Arrowhead is located in Edmond, Oklahoma (Dkt. No. 10-1 ¶ 2), it appears that this action could have been filed in the Western District of Oklahoma. *See* 28 U.S.C. § 116; *Snider v. Frasier, Frasier and Hickman, L.L.P.*, No. 3:10-0031, 2010 WL 3619796, at *1 (M.D. Tenn. Aug. 11, 2010) (observing that Edmond, Oklahoma is within the Western District of Oklahoma). Additionally, the Court finds that transfer is in the interest of justice to ensure no potential statute of limitation issues arise as a result of dismissal. While defendants contend that Mr. Soares's prior bankruptcy proceeding against them was dismissed based on Mr. Soares's bad faith in filing that action, it is not readily apparent that Mr. Soares filed the present action in this forum in bad faith. Thus, dismissal would only be "time-consuming and justice-defeating." *See Miller*, 905 F.2d at 262 (internal quotations and citation omitted); *see also Amity Rubberized Pen Co. v. Market Quest Group Inc.*, 793 F.3d 991, 997-98 (9th Cir. 2015) (concluding that where appellate jurisdiction was lacking, a transfer to the Federal Circuit pursuant to 28 U.S.C. § 1631 "would be in the interest of justice"). Accordingly, rather than dismiss this action, this Court will transfer this matter to the United States District Court for the Western District of Oklahoma.

## IV. CONCLUSION

Based on the foregoing, the Court finds that it lacks personal jurisdiction over defendants and orders the Clerk to transfer this action to the United States District Court for the Western

District of Oklahoma. The initial case management conference scheduled for January 28, 2022 is vacated.

**IT IS SO ORDERED.**

Dated: January 4, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California